CITY OF ATCHISON *et al. v.* THEODORE BARTHOLOW *et al.*

*Error from Atchison County.*

An application for an injunction must be on affidavit [Civil Code, § 248], defined a "declaration under oath" [*id.*, § 343]; and though a petition, properly verified, may be read in evidence on such application, yet where the verification by plaintiff is only "according to the best of his knowledge, information and belief, true in substance and in fact," it is not sufficient, though it might have been under the chancery forms.

*Semble,* the difference between an affidavit and a deposition is in the requirement of notice in the latter; both should be sworn to positively.

The validity of a law must be maintained unless a clear case be presented, where it is palpably in contravention of the constitution, by which all branches of government are bound.

Corporations are rightful subjects of legislation, and within the general grant of legislative power contained in art. 2, § 1, of the constitution; and *it seems* that under the organic act they might be granted either by special or general law. [3 Kas., 445.]

Art. 12 of the constitution is merely restrictive of the general power conferred by art. 2, § 1, and was inserted to prevent abuses.

Section 5 of art. 12 was intended to regulate the general grant of power to organize municipal corporations, and to compel the legislature, when it took action upon the subject, to do so by general law.

Improving streets of a municipal corporation, making a levy to pay there-
    for, and enforcing payment thereof against property, is the exercise of
    corporate power, which, under the constitution, cannot be conferred by
    special enactment.

The act of Jan. 25th, 1866, amending the special charter of the city of
    Atchison, subjecting other classes of property to taxation for street im-
    provements than would have been done by the territorial charter, confers
    other powers than those existing at the adoption of the constitution.  The
    city must remain in the legislative situation it then occupied.  The act
    aforesaid is in conflict with the restrictive provisions of the constitution,
    and void.

The city of Atchison was organized as a corporation
under a special act of the territorial legislature.  After
the adoption of the constitution of the state, Jan. 25th,
1866 (*L.* '66, *p.* 120), the city charter was amended,
among other things, in respect to the mode of collect-
ing assessments for improving streets, as to change the
rate and proportionate bearing upon the property.   An
injunction was granted by the court below.   To reverse
this decision was the object of this action.   Other facts,
relating to the verification of the petition, appear in the
subjoined petition.

*A. H. Horton* and *C. G. Foster*, for plaintiffs in error.

*Otis & Glick*, for defendants in error.

*A. H. Horton* and *C. G. Foster*, for plaintiffs in error,
submitted :

The writ of error is sued out under section one of
the "Act to amend an act entitled 'An act to amend an
act entitled 'An act to establish a code of civil pro-
cedure.'"   *Laws of Kans., of* 1865, *p.* 130.

The application for the order of injunction was based

upon the following propositions, as appears from the petition in the case of Bartholow *et al. v.* The City of Atchison and Samuel C. King :

1. The ordinance under which the special assessments for improvements were levied, does not specify for what particular improvements, nor on what contracts, the money so to be collected is to be paid.

2. The ordinance providing for special assessments, approved February 15th, 1866, was not authorized by the charter of the city of Atchison, and is a violation of the provisions of the same.

3. The special assessments complained of by defendants in error were levied for purposes not contemplated or permitted by law, and that certain items of expense mentioned in the petition of the defendants in error, in the original case, as some of the purposes for which said assessments were levied were fraudulent, and levied with the intent to cheat and defraud the said plaintiffs in the original case, and other taxpayers of the city of Atchison.

4. The act of the legislature of the State of Kansas, entitled "An act to amend an act, approved February 11th, 1859, entitled 'An act to amend an act to incorporate the city of Atchison, Kansas Territory,' approved February 12th, 1858," approved January 25th, 1866, is unconstitutional and void.

5. The levy was made to pay for work done in the years 1863, '64 and '65, when it should have been made only for work made, or contracted to be made, in 1865.

6. Several thousand dollars more were levied under said ordinance than was due for all work done, or improvements made.

Plaintiffs in error claim that the judge erred in grant-

ing the injunction prayed for, and demand that said order be reversed and vacated, because:

1. There was no affidavit of the plaintiffs, or their agent, on file, as required by law.

2. Upon the hearing of the motion, no affidavits or other evidence were read or offered in support of the same.

3. The verification of the petition was not sufficient to authorize the allowance of the same.

4. The notice of said motion, served upon defendants in the original case, did not state affidavits were to be used upon the hearing.

5. The facts set forth in the petition of defendants in error are not sufficient to maintain the action.

6. The order of injunction should have been refused and denied, according to the law of the land.

1. There was no affidavit of the plaintiffs, or their agent, on file, as required by law.

Sec. 248 (*Comp. L.*, *p.* 164), provides an injunction may be granted, upon its appearing satisfactory to the court or judge, by the affidavit of the plaintiff, or his agent, that the plaintiff is entitled thereto. No injunction can be granted unless this provision of the law is complied with. "An injunction cannot be allowed on a complaint alone, though it appears from the facts set forth in it that the plaintiff is entitled to an injunction, unless such complaint be duly verified so as to make it, in legal effect, if not in form, an affidavit. (*Krom* v. *Hogan*, 4 *How. Pr. R.*, 225; *Penfield* v. *White*, 8 *Pr. Rep.*, 87.) § 258, Comp. L., p. 166, provides that all affidavits shall be filed. (7 *How. Pr. Rep.*, 224.) Difference between the jurat prescribed by the chancellor and an affidavit."

On the hearing of the motion granted, the verified

petition of the defendants in error was introduced and read as an affidavit, and as evidence of the facts therein contained.

The verification to the petition is defective, because it does not verify, positively, the allegations of the petition. We admit that a petition verified, positively, and not on information and belief, is, in effect, an affidavit, and is sufficient to obtain an injunction. (*Levy* v. *Ely*, 15 *How. Pr. Rep.*, 397.) For form of verification see same authority, pp. 2 and 397. The facts on which an injunction is granted must be sworn to positively. If the plaintiff does not know of their truth, he must produce the affidavits of others who do know it. (5 *How. Pr.*, 439 ; 1 *Code R.*, 114 ; 3 *How. Pr.*, 327). Injunctions are not issued upon mere information and belief. (*Pomeroy* v. *Haielmarsh*, 5 *Pr. Rep.*, 439 ; 3 *How. Pr. R.*, 328 ; *Roome* v. *Webb*, 1 *Code Rep.*, 114.) The verification to the petition of plaintiffs in the original case, being only "according to the best of their knowledge, information and belief," is bad, and is simply an affidavit founded on information and belief. The law requires that it shall appear satisfactorily that the plaintiff is entitled thereto (*Comp. L.*, *p* 164, § 248), before the injunction is granted ; and the belief of the parties, sworn to, cannot satisfy a judicial officer of the truth of the allegations to be proved.

2. Upon the hearing of the motion, no affidavits or other evidence were read or offered in support of the same.

The affidavit or verification annexed to the petition, being merely on "information and belief," and not verifying, positively, the allegations of the same, did not make the petition, within the meaning of the law, an affidavit of the plaintiffs to entitle an order of in-

junction to issue. (*Levy* v. *Ely*, 15 *How. Pr. Rep.*, 397; 12 *How.*, 464; 5 *How.*, 208; *James* v. *Atterbury*, 1 *Code, R. N.*, § 87; 3 *How.*, 327.) The verification should have been to the effect, that to the knowledge of the plaintiffs, all the positive averments and statements in the petition are true, and all the allegations and averments therein stated, made on information and belief, he believes to be true; and that he is informed and believes the information to be true, and not that he believes the statements to be true. 15 *How. Pr. Rep.*, 397; *McCall's Forms*, 40.

3. The verification of the petition was not sufficient to authorize the allowance of the order.

The verification of the petition being bad, and not filling the requirements of an affidavit, plaintiffs had no authority to read the same as an affidavit.

4. The notice of motion to grant an order of injunction served upon defendants in the original case, did not state affidavits were to be used upon the hearing of the same. *Comp. L.*, 214, § 517.

5. The facts set forth in the petition of the defendants in error are not sufficient to maintain the action.

One objection to the collection of the tax is, "that the ordinance providing for special assessments, approved Feb. 15th, 1866, was not authorized by the charter of the city of Atchison, and is a violation of the provisions of the same." The ordinance is drawn up in the identical language of the amended charter of the city. *Laws of* 1866, 120, §§ 1, 7, 8. *Ordinance of the city, approved Feb. 15th*, 1866, §§ 1, 2.

Another objection is, that the act of the legislature of the State of Kansas, entitled "An act to amend an act, approved Feb. 11th, 1859, entitled 'An act to amend an act to incorporate the city of Atchison, K. T.,' ap-

9

proved Feb. 12th, 1858," approved Jan. 25th, 1866, is unconstitutional and void. All of the parties in this case are interested in having the validity of this act of the legislature passed upon. It is of the utmost importance to the city authorities of Atchison city to be informed whether or no the amendment to the city charter laws of 1866 (120), under which they are now prosecuting improvements, costing thousands of dollars, and paying taxes for the payment of the same, is a valid act. It is important to all the citizens of Atchison that the mode of making improvements, and the manner of paying for the same when made, should be speedily and definitely settled.

It was insisted in the court below, that the act of 1866, p. 120, of laws of 1866, is in violation of the 1st section of article 12 of the constitution of the state; and, second, that the act is also in violation of sec. 5, art. 12, of the constitution of the state. We admit the right and duty of the judicial tribunals to determine whether the legislative act, drawn in question in a suit pending before them, is opposed to the constitution of the state, and if so found, to treat it as a nullity (1 *O. S. R.*, *p.* 77), but insist that the presumption is always in favor of the validity of the law; and it is only when manifest assumption of authority and a clear incompatibility between the constitution and the law appear, that the judicial power will refuse to execute it. Such interference can never be permitted in a doubtful case. (1 *O. S. R.*, *p.* 82.) In Hylton *v.* the United States, 3 Dallas R., 171, Mr. Justice CHASE declares, "if the court have such power, I am free to declare that I will never exercise it but in a very clear case." If it be doubtful or questionable whether the legislative power has exceeded

its limits, the judiciary cannot interfere, though it may not be satisfied that the act is constitutional.  2 *Mon.* (*Ky.*), 178 ; 9 *Dana*, 514 ; 14 *Mass. R.*, 345 ; 4 *Dall. R.*, 14 ; 8 *Cranch's R.*, 87 ; 3 *Dana*, 381 ; 16 *Mass.*, 245 ; 6 *Cranch*, 87; 3 *Denio*, 381; 3 *Seld.*, 107.

Section 1, art. 12, of the state constitution, providing "the legislature shall pass no special act conferring corporate powers," does not include "cities, towns and villages." Section 6, of art. 12, defines the term "corporation," as used in the article ; and by sec. 5 of the same article, special provision is made for the organization of "cities, towns and villages." The framers of the constitution evidently did not intend to include in sections 1 and 2, "cities, towns and villages," or they would not have provided by another, and a separate section, the mode of incorporating them.  A distinction is made in the article, between corporations, and what is usually denominated municipal corporations.  The provisions of the constitution are too explicit to admit of the least doubt that they were intended to disable the legislature of the state from either creating corporations, or conferring upon them corporate powers, by special acts of legislation ; but such provisions have no reference to municipal corporations, which are treated in the constitution under the head of "cities, towns and villages." That such has been the legislative construction of section 1, art. 12, of the constitution of the state, and the universal opinion held in reference to this section, we refer to the various acts passed by the Legislature of the State of Kansas in the years 1861, '62, '63, '64, '65, '66, amending the charters of various cities of the state. On page 168, laws of 1861, approved June 4th, 1861, the city council of Lawrence was given the power in

each year, "to impose upon all male persons, between the ages of twenty-one and sixty years, in the city, a capitation tax, of not exceeding one dollar."

By an act to amend an act entitled "An act to incorporate the city of Sumner," approved June 3d, 1861, laws of 1861, pages 25, 174, 175, &c., the provisions of the original charter of the city were materially changed, new powers granted and different powers conferred. In 1862, pages 405, 6, 7 and 8, of Comp. Laws, the charters of the cities of Elwood, Gardner, Quindaro, and White Cloud, were amended by acts of the legislature, and new powers conferred. In 1863, laws of 1863, pages 39 and 40, the cities of Marysville and Iowa Point obtained by special acts from the legislature, amendments to their city charters, containing corporate powers. In 1864, the cities of Marysville and Paola obtained also special acts from the legislature amending their charters. (*Laws of* 1864, *pp.* 140, 1, 2.) In 1865, amendatory acts were passed by the legislature incorporating the cities of Atchison and Lawrence. (*Laws of* 1865, *pp.* 92, 109.) In pursuance of the same action, the amendment to the city charter of Atchison, under which the tax complained of was levied, was passed by the legislature in 1866. No question has ever been heretofore raised in reference to the validity of these several amendatory acts, and it seems to have been conceded in all quarters that section 1 of art. 12 of the constitution had no application to "towns, cities and villages." Such a view has been the basis of at least one-third of the legislation of the state since its admission into the Union—a period of over five years. Under such legislation, vast transactions have taken place, large sums of money have been collected and expended; and at this late

day, to declare all these acts of the legislature null and void, would produce interminable confusion, and bring ruin upon more than one municipal corporation of the state.  4 *Gill & J.*, 1 ; 12 *Gill & J.*, 1 ; 2 *Ala.*, 571 ; 11 *U. S. Dig.*, 592 ; 3 *Kans.*, 199.

If, however, it be held that the legislature can pass no special act conferring corporate powers upon municipal corporations, still plaintiffs in error insist that the amendatory act of 1866, amending the city charter of Atchison (*L.* '66, 120), is valid and constitutional, because it conferred no corporate powers, but only regulated powers before conferred and in existence.    The mayor and board of councilmen of the city of Atchison, by its original charter, approved Feb. 12, 1858, and an amendatory act of incorporation, approved Feb. 11, 1859, have full authority to make improvements, and to levy taxes to pay for the same.    (*Chart. City of Atchison*, 11, 12, 13, 25, 26.)    The amendatory act of 1866 only changes the mode of collecting the assessments.    No corporate powers are conferred by the same.

Again, it was insisted, in the court below, that the law of 1866, amendatory of the city charter of Atchison, is in violation of section 5, art. 12, of the state constitution.    The city of Atchison having been incorporated prior to the adoption of the constitution of the state and the admission of the state into the Union, is not affected by section 5 of art. 12.    The adoption of the constitution did not have the retroactive effect of abrogating laws already passed.    (2 *Kas.*, 433 ; 10 *Ohio S.*, 589.)    Section 5 of art. 12 of the constitution was adopted for the future organization of "cities, towns and villages," and the duty of the legislature to restrict

extends only to the organization of cities, &c., under general laws.

It was also insisted that because 'the power of taxation and assessment is not restricted in the amendatory act, it thereby is void and in conflict with the said section 5 of art. 12 of the constitution. We understand the closing paragraph of this section of the constitution as leaving a discretion to the legislature. The reasoning of the Supreme Court in 1 Kan., 178, will apply, to a great extent, to this provision of the constitution. It is entirely within the discretion of the legislature to fix what the required restriction shall be.

The security against the abuse of this power is found in the structure of the government itself. In imposing taxes and assessments, the government acts upon its constituents. This is in general a sufficient security against oppressive taxation.

The city authorities are the representatives of the citizens incorporated in a municipal corporation, and the influence of the constituents over their representatives is a sufficient guard and restriction to the power of taxation. 4 *Wheat.*, 428; 1 *Ohio S.*, 103; 3 *Kans. R.*, 203, 204; 5 *Ohio S.*, 248; 4 *Comst.*, 419; 2 *Mich.*, 560.

From this argument, we conclude a demurrer to the petition of defendants in error would be sustained; hence, it does not contain facts sufficient to constitute a cause of action.

Finally, there was error in the order of the judge granting the order of injunction, because "the order of injunction prayed for should have been refused and denied according to the law of the land." In general, clear, legal or equitable rights, free from reasonable doubt, must be satisfactorily shown, to authorize a preliminary injunction. (2 *Ashm.*, 312; *Snowden* v.

*Noah, Hopk.,* 347; *Hill on Inj.,* 10, 11, 12.)   It is not for every threatened violation of the legal rights of a party that a court of equity will intervene with its remedy by injunction, even in cases where that remedy would be efficient.   15 *Ohio S.,* 66.

An injunction will not be granted for every wrongful or unconstitutional act of individuals or corporations. (*Blake* v. *Brooklyn,* 26 *Bark.,* 301.)   Courts of equity ought not, except on the clearest grounds, to interfere with the speedy collection of public taxes.   (23 *Conn.,* 232.)   Courts will not interfere by injunction to prevent a sale of personal property for non-payment of taxes. (*Hilliard on Injunctions,* 385.)   The courts have allowed relief by injunction in cases where real property was about to be sold for the non-payment of taxes assessed by municipal corporations, but have never allowed it to prevent a sale of personal property.   The distinction is obvious enough.   In one case, a cloud is about to be drawn over a land title, and the court interferes to prevent it.   In the other, the legal remedy is full and complete, and no reason exists for the interposition of equity.   (*Lockwood* v. *St. Louis,* 24 *Mis.,* 20.)   In the present case, the order was granted to restrain the collection of the taxes upon the personal property of defendants in error, as well as their real estate.   Indeed, the purpose of the injunction seems to be to restrain the collection of the tax upon personal property, rather than upon real property.   "If the assessment against the plaintiffs (in the original case), could be considered a nullity, conferring no authority to sell the personal property of the plaintiffs, the remedy of the party would be to sue the officer for the trespass, and disregard the pretended title of the purchaser."   (*Deane* v. *Todd,* 22 *Mis.,* 91.)   "The unlaw-

ful collection of a tax is a mere trespass, not to be enjoined, without allegation and proof of irreparable injury therefrom." 24 *Mis.*, 20 ; 2 *U. S. Eq. Dig.*, 529 ; 4 *Gill & J.*, 1 ; 4 *Paige,* 399.

*Otis & Glick,* for defendants in error, submitted :

1. The amendment to the charter of the city of Atchison, approved Jan. 25, 1866 (Laws of 1866, 120), is a special act conferring corporate powers, and is therefore void, being in violation of Const. § 1, art. 12. 15 *O. S. R.*, 21.

2. There is no limitation as to the amount provided for by this amendment. It violates Const., § 5, art. 12. The law permits an assessment to the full value of all taxable property in the city. It is simply wholesale confiscation.

3. This amendment is obnoxious to Const., § 5, art. 12, in this : That it levies an assessment on personal property that is not subject to it by the constitution. Taxes are levied by a uniform rate, while assessments are local charges. The word "assessment," as used in § 5, art. 12, of Const., means a charge on adjacent lands or lots, for the improvement on the same, and therefore personal property is not, nor cannot be, subjected to an assessment. The word "assessment" has received this definite and fixed meaning, and is so used in our constitution. (*Hines et al.* v. *The City of Leavenworth,* 3 *Kans. R.*, 186 ; 1 *Handy,* 404 ; *Hill* v. *Higden,* 5 *O. S. R.*, 243 ; *Peoria City* v. *Ridder,* 26 *Ill.*, 351 ; *Scoville* v. *City of Cleveland,* 1 *O. S. R.*, 226 ; *People* v. *Mayor of Brooklyn,* 4 *Com. R.*, 440 ; 11 *Johns. R.*, 77.) This amendment discharged a large amount of property from its just assessment, and

wrongfully charged it to property that was in no way subject to it. We deny the power of the legislature to thus discharge one man from liability and charge that liability to another.

4. The ordinance does not follow the law; it does not make the assessment for the purpose, nor in the manner, provided by the amendment. (*See Ordinance.*) The city can take no power by implication. (*Leavenworth* v. *Norton*, 1 *Kans. R.*, 432.) And as the ordinance is not in accordance with the power conferred, it is void, and the assessment falls with it. The ordinance must follow the power delegated, or it is void. *Sedg. Stat. and Const. Constr.*, 466, *et seq.*; 9 *O. S. R.*, 439.

5. The tax levied is void, because it is more than was due, which is shown by the petition, and is a fact. This makes the levy void. *Blackwell on Tax Titles*, 159; *Kruper* v. *McClelland*, 19 *O. R.*, 308, 26, 28.

6. The tax is void, because it is levied for purposes not authorized by the amendment, conceding that it is constitutional. It is in violation of section 7 of the amendment. That section limits the assessment to improvements made and contracted to be made in 1865. (*Sedgwick*, 466.) This assessment, the bill shows, covers improvements for three years, and for general city purposes.

7. The assessment is fraudulent. The statements and facts set forth in the petition show this. "Fraud vitiates all things."

8. The affidavit is sufficient. It is in the old form to bill in chancery, and that is all that is required. (*Brown et al.* v. *Web*, 1 *Code R.*, 114; *Levy* v. *Ely*, 15 *How. Prac.*, 395; *Voorhe's Code*, 308, *note* "*b.*") Granting an injunction is a matter of discretion. If

the showing appears satisfactory to the judge, the injunction will be granted. It is in his discretion to allow or not (*Code*, § 248), and this discretion is not subject to review. This error, if one exists, is not prejudicial to plaintiffs. It is subject to amendment at once. *Code*, § 305, *p.* 148; *Case* v. *Hannahs*, 2 *Kas.*, 440.

*By the Court*, CROZIER, C. J.

The action in the court below was instituted for the purpose of perpetually enjoining the collection of a tax of four and one-half per centum upon all the taxable property, real and personal, in the city of Atchison, levied for the purpose of paying for certain improvements which had been made, and were then in progress therein. Application was made to the judge of the district court in vacation for a temporary injunction, upon the hearing of which the only testimony adduced was the petition. The defendants objected to the reading of that paper as evidence, on the ground of the insufficiency of the verification.

It was in these words:

   "THE STATE OF KANSAS,    } ss.
       ATCHISON COUNTY,    }

"Theodore Bartholow, W. L. Challiss, M. Frank, M. Greenabaum, who being first duly sworn according to law, deposeth and say, that the said several matters and things set forth in the foregoing petition, are, according to the best of their knowledge, information and belief, true, in substance and in fact, except as to such mat-

ters as stated on information and belief, and as to such statements affiants believe them to be true.

> THEO. BARTHOLOW,
> W. L. CHALLISS,
> M. FRANK,
> M. GREENABAUM.

"Sworn to and subscribed before me, this 5th day of May, A. D., 1866.                  R. L. PEASE,
[L. S.]                                      *Notary Public.*"

The objection was overruled, and the paper was read. A temporary injunction was ordered, to reverse which order the case was brought here.

Section 248 of the code, provides that "a temporary injunction may be ordered upon it appearing satisfactorily to the court or judge, by the affidavit of the plaintiff or his agent, that the plaintiff is entitled thereto."

The affidavit of the plaintiff to the necessary facts, will, under this provision, be sufficient, and the petition, if properly verified, may be used as an affidavit; *i. e.*, it may be read as testimony. To determine whether the petition here was admissible as testimony, it will be necessary to ascertain the legal requirements of an affidavit.

Section 343 of the code defines an affidavit to be a declaration under oath, made without notice to the adverse party. By the next section, a deposition is said to be a declaration under oath, made upon notice to the adverse party. Each is a declaration under oath, the only difference being, one is made without notice, the other upon notice. Now, it would not be pretended that it would be admissible testimony, if, in a deposition, a witness should say that a certain statement was, "according to the best of his knowledge,

information and belief, true, in substance and in fact."
And for very obvious reasons, too. He might have no
knowledge of, or information upon the subject, except
mere hearsay, and yet could conscientiously make
such a declaration. He might be thoroughly con-
vinced, by irresponsible publications, of the existence
of a certain state of facts; yet no modern rule of evi-
dence would permit him to state such belief as testi-
mony. So, in the case at bar, the affiants might con-
scientiously make the declaration they did make
without being personally cognizant of a single fact
stated in the petition.

But it is claimed that the jurat is according to the
chancery forms. Such may be the fact, and yet noth-
ing to the purpose, for various reasons. The chancery
forms, as such, were abolished by the code. They
were prescribed by the chancellor, and by him strict
compliance therewith might be required, or relaxation
thereof indulged, as circumstances should dictate.
Here, the situation is very different. The court is
bound by a rule prescribed by the legislature, and
cannot properly relax or disregard it. It is a rule of
evidence upon which there is no room for construction.
It is so plain, there can be no mistaking its meaning.
The application must be supported by a "declaration
under oath." The judge is not authorized to listen to
or consider any other kind of testimony.

The petition, as verified, was not "a declaration
under oath," and it was error to permit it to be read,
against the objection of the defendant, for which reason
the order of injunction must be vacated.

The court might stop here, inasmuch as the view it
has taken of the preliminary question, would dispose
of the case, so far as this court is concerned for the

present; but as it will inevitably return here for an adjudication of the main question, the court is disposed to comply with the request of counsel upon both sides, and consider it now.

The question referred to, presented in its nudity is, whether the legislature of this state can confer powers upon towns, cities and villages by special enactments. This is a very delicate and important question, involving as it does the validity of a solemn act of the highest law-making power in the state, and affecting, as its decision must, vast pecuniary rights. It is very embarrassing for one of the branches of the government to sit in judgment upon a co-ordinate branch, equally independent; but such is the construction of the government that it must sometimes be done. The supreme power of interpreting the fundamental law could not well be retained by the people, but must, for convenience, be deposited somewhere. This tribunal having been selected for that purpose, ignoring all considerations of delicacy, it must, when called upon, assert its power. But in exerting the power specially invoked in this case, the rule has been wisely established that the action of the legislature shall be upheld, unless palpably in contravention of the organic law. The legislative, executive and judiciary departments of the government—the legislators when they enact the law, the governor when he approves it, and the judges when they interpret it—are in their consciences bound to a like allegiance to the constitution; and it is not on any slight difference of opinion between the two former and the latter, that the judiciary will be authorized to set aside the action of the law-making power. Reason and the rule concur in demanding a clear case, to jus-

tify such action; and in the present case this court hopes to be guided thereby.

The creating of corporations and making provisions for the organization of cities, towns and villages, have so long been regarded as the legitimate exercise of legislative power, that it would not only be useless, but inexpedient, to question the propriety thereof now. All agree that they are rightful subjects of legislation, and are within the general grant of legislative power contained in § 1, art. 2, of the constitution; and it is very manifest that if there were no restraints upon its action in this behalf, the legislature might select its own mode of exercising the power. It might, by special enactment, create corporations and organize cities, towns and villages; or it might, by general law, provide for their creation and organization. Either mode would be a legitimate exercise of the power. This court has already held that the organization of cities by special enactment was a proper exercise of legislative power under the territorial government, the fundamental law of which conferred upon the legislative branch thereof a general power similar to that conferred by the clause of the constitution referred to, upon the legislature of the state, to which opinion the court still adheres. *State* v. *Young*, 3 *Kans. R.*, 445.

If the framers of the constitution had intended that the powers referred to should still continue as they existed at the time they were in session, they had need to say no more upon the subject than is contained in the first section of the second article. The language therein employed had a well understood legal significance, as many of the members of that august convention, being eminent lawyers, must have known. But the fact that further action upon the subject was taken,

demonstrates that the intention was not to suffer the power to remain in the unbridled condition it then was. The subject was considered of sufficient importance to justify the framing of a distinct article of the constitution thereon. It is as follows:

"ARTICLE XII.—CORPORATIONS.

"SECTION 1. The legislature shall pass no special act conferring corporate powers. Corporations may be created under general laws, but all such laws may be amended or repealed.

"SEC. 2. Dues from corporations shall be secured by individual liability of the stockholders to an additional amount, equal to the stock owned by each stockholder; and such other means as shall be provided by law; but such individual liabilities shall not apply to railroad corporations, nor corporations for religious or charitable purposes.

"SEC. 3. The title to all property of religious corporations shall vest in trustees, whose election shall be by the members of such corporations.

"SEC. 4. No right of way shall be appropriated to the use of any corporation, until full compensation therefor be first made in money, or secured by deposit, of money, to the owner, irrespective of any benefit from any improvement proposed by such corporation.

"SEC. 5. Provision shall be made by general law, for the organization of cities, towns and villages, and their power of taxation, assessment, borrowing money, contracting debts, and loaning their credit, shall be so restricted as to prevent the abuse of such power.

"SEC. 6. The term corporation, as used in this article, shall include all associations and joint stock companies, having powers and privileges not possessed

by individuals and partnerships; and all corporations
may sue and be sued in their corporate name."

The whole of this article is merely restrictive of the
general power conferred by section 1 of article 2. It
adds nothing to the power of the legislature, nor could
it have been so intended. All legislative power upon
the subject had already been conferred. It may be
true that the legislature, in exercising the power, might
have done precisely what this clause requires of it, had
it been omitted; but it seems to have been thought
expedient to compulsorily restrain its action, and such
alone was manifestly the intention of this article. This
brings us directly to an examination of its provisions.

Before the adoption of the constitution, the practice
was to create corporations and organize cities and
towns by special laws. When a party of individuals
desired to form an association for any purpose, they
drew up a bill conferring upon themselves whatever
powers they desired to exercise, and procured it to be
submitted to the legislature, a large majority of the
members of which had no apparent interest therein.
Its office would be located at a particular place, remote
from the residences of most of them, and they could
not discover that they or their constituents could be
much affected by its operations. This was repeated
from year to year, and would have been continued had
the same condition of things remained, until, in every
part of the commonwealth, bodies corporate would
have existed, with powers which the members of the
legislature, in the aggregate, had no idea had been
conferred. The organization of cities and towns, by
special enactment, is demonstrably equally impolitic.
The members from a certain city or town, for purposes
of individual aggrandizement or immunity, might de-

sire a change in their organic law. A bill is framed and submitted, and when action is to be taken thereon, the body is informed that it expresses the views of the representation of the locality immediately affected; whereupon no objection is made, and the work is done; whereas, if the same thing were sought to be made applicable to the localities represented by a majority of the members, the measure would be spurned from the halls of legislation. This same city of Atchison furnishes an example of what could be accomplished under this system. An influential member, being a large real estate owner therein, sought to exempt it from municipal taxation, and at the same time keep subject thereto the property of others similarly and not so eligibly situated. And the thing was accomplished in the manner above indicated, much to the chagrin of his unfortunate constituents. To prevent just such abuses, and others equally meretricious, the twelfth article was inserted in the constitution.

The first clause, although but one of those composing the section, is entirely independent of the others, and is clear and explicit. Although municipal organizations may not have been regarded, technically considered, as corporations, yet, for many purposes, they have always been treated as such. They may be authorized to loan their credit, and to borrow money; to build public edifices, make improvements, and levy contributions to pay the same; and to do many other things so similar to those which other corporations may be empowered to do, that it would be absurdly hypercritical to insist that in one it was the exercise of corporate powers, and not so in the other. A turnpike company might be authorized to levy an assessment upon its stockholders, in proportion to their interest,

for the purpose of improving its road, the franchise belonging to the members in common, and might enforce payment against their private property, and no intelligent individual would deny that such action would be the exercise of corporate powers; and yet it is claimed that for the improvement of a street in a municipality, which is the common property of the citizens thereof, a levy to pay for the same, and the enforcement of payment thereof against the individual property of the residents, is not the exercise of corporate power. The court cannot see the distinction.

If these views are correct, power to do any of the acts above named cannot be legally conferred by special enactment.

But it is claimed that the act of January 25th, 1866, under which the tax complained of purports to be levied, is not in violation of the clause of the constitution as above construed, for the reason that it does not confer any corporate powers, but merely regulates powers already conferred. The laws chartering the city of Atchison, and amendatory thereof, in force at the adoption of the constitution, it is claimed, authorized the city authorities to make improvements, and to levy taxes to pay for the same, and that the act of 1866 was intended only to regulate the exercise of that power. Now, if the law in force during the territorial existence authorized the taxation of only particular pieces or classes of property, for certain local improvements, and the act of 1866 would subject other pieces and classes to taxation for the same improvements, the latter, very manifestly, would confer other powers than those heretofore existing. The intelligence of a court might be very properly suspected, which should hold that a law which authorized the taxing of property,

exempt under prior laws, or which substituted a general tax upon all the real and personal property in a city for special assessments upon adjacent real estate, to pay for local improvements, did not confer additional or other powers. This proposition, it seems to the court, need not be further discussed.

But there is another view of the subject, well worthy of consideration. ·

It has already been said that the power to organize cities is conferred upon the legislature by sec. 1, art. 2, of the constitution; the discretion of the legislature in this behalf would be very wide, and as before indicated, would authorize great abuses. But the legislature was not left unlimited in the exercise of this power. Sec. 5 of art. 12, above quoted, imposes very salutary restrictions. It was not necessary to give the power to organize cities, but was intended to regulate the exercise of that power. The legislature shall make provision, by general law, for their organization. Without this provision, admitting, for the argument's sake, that the first clause of sec. 1 does not apply, the legislature might resort to special acts for this purpose. What other reason, then, can be assigned for the provision, than that it was intended to compel the legislature, when it took action upon the subject, to do so by general law? If it might, nevertheless, organize cities by special act, the provision would be an idle one, having no efficacy whatever, and might, without changing the effect of that instrument, be expunged from the constitution. It is but charitable to suppose that its framers intended it for some purpose. Having given the legislature· the power, in the general grant of power, to take action in the premises, and deeming it wise to impose upon it the obligation to restrict the "powers of

taxation, assessment, borrowing money, contracting debts, and loaning their credit so as to prevent the abuse thereof," it was thought best to require it to give the citizens the benefits of these organizations, but that it would operate as an additional safeguard, to require it to be done by general law, thus making it to the interest of the whole people of the state to see that· a proper law should be enacted.

Such, in the opinion of the court, was the object of the clause ; and as to its propriety, there can scarcely be two opinions.

But it is claimed that this view of the subject can have no application to the case at bar, inasmuch as Atchison was an organized city prior to the adoption of the constitution.

The court agrees with the counsel as to the fact, but not as to the conclusion drawn therefrom. It does not necessarily follow, that, because a city was originally organized under a special act of the legislature, special acts may now be passed. If it could be changed in one particular, it might be in every one, thus nullifying the provisions of the constitution, the very objects of which were to prevent special legislation. It is a wholly immaterial question, what would have been the situation had the legislature enacted a general law under which the city of Atchison could have properly been reorganized ? The legislature may have been very distinct in failing to pass a law which should give scope for the exercise of the progressive spirit and enterprise of the citizens of that flourishing young metropolis ; but such omission can not affect the question of constitutional power. Should a general law be passed, the provisions of which would be applicable thereto, whether that city would necessarily

be brought within its provisions and requirements, is not now a question here; but the court is decidedly of the opinion, that, in the absence of such a law, it must remain in the legislative situation it occupied at the adoption of the constitution.

The court is aware of many of the disastrous consequences which must necessarily follow this decision; and if in conscience it could have done so, would gladly have avoided them. It had but a single duty to perform. It has endeavored thoroughly to understand the subject, and has acted in accordance with its convictions. If the conclusion at which it has arrived be erroneous, the regrets of the sufferers will not be keener than those of the members of this tribunal. But if the decision is correct, it is better that it be now declared, than that the blow should fall with greater effect hereafter.

Decision of the court below reversed.

All the justices concurring.