B. GRAY v. ELIZABETH I. CROCKETT, *et al.*

CH. 191, LAWS OF 1879, *Void.* The special act of the legislature, entitled "An act excluding certain farming property from the corporate limits of Wyandotte city, Kansas," approved March 12, 1879, is unconstitutional and void.

*Error from Wyandotte District Court.*

ACTION brought March 3, 1882, by *B. Gray* against *Elizabeth I. Crockett, H. C. Long* and *Martha M. Long,* to compel them to convey certain real estate. The terms of the alleged contract set forth in the petition are as follows:

"April 22, 1881. Agreement between H. C. Long and B. Gray for sale of his farm of thirty-three acres, s. side of Tauromee street, Wyandotte, for eight thousand dollars.

"Said Long agrees to sell the said farm for $8,000, payable as follows: $500 by the 28th of April, inst., $1,500 in three months from date, and balance, $6,000, in three years, with interest at 8 per cent.

"Gray agrees to make payment as above, and pay Armstrong's commission, not exceeding $100.

"Gray to have possession when $2,000 is paid, and deed then to be given, and mortgage then given to Long for three years at 8 per cent., with the privilege of paying whole or part sooner."

The answer, among other matters, alleged that the real estate described was, at the execution of the said pretended contract, the homestead of H. C. Long and family, and that

Martha M. Long, his wife, did not join in the alleged contract or consent thereto. Trial had at the July Term of the court for 1882. The following admissions of fact were made by the parties:

"That defendant H. C. Long, on the 22d day of April, was the owner of the thirty-three acres of land described in plaintiff's petition.

"It is agreed that, if said land is outside of Wyandotte city, it was a homestead at the time of contract between plaintiff and said defendant H. C. Long, and could not be alienated without the joint consent of husband and wife.

"It is admitted that on the 22d of April, 1881, the land in controversy was occupied by H. C. Long and family as a homestead — that is, that they had a homestead thereon.

"It is admitted that, under the charter incorporating the city of Wyandotte in the year 1859, the land in controversy is within the corporate limits of said city. And it is further admitted that, in the year 1879, the land in controversy was excluded from said city limits by an act of the legislature, approved March 12, 1879. The point in dispute is as to the constitutionality of the law of March 12, 1879. If that law is valid, the land in dispute at the date of sale was outside of the city limits, and occupied as a homestead. If that law is void, the land in controversy is within the city limits, and not a homestead.

"It is admitted that, on December 24, 1881, when H. C. Long and Martha M. Long conveyed to Elizabeth Crockett thirty-one acres of the land in controversy, said Mrs. Crockett had notice of the written contract of sale of H. C. Long to plaintiff, B. Gray.

"The execution of contract of sale mentioned in the petition of the plaintiff is admitted.

"It is also admitted by the parties hereto that the lands adjacent to the tract in controversy (on the north and east) had been surveyed and platted into lots, but that the premises in controversy never had been surveyed and platted into lots."

The issues formed were submitted to the court upon the admitted facts and the evidence introduced by the parties, with a request that the court find the facts specifically, and state its conclusions of law thereon. This was done. The facts found are these:

"1. The land described in the plaintiff's petition has been occupied by the defendants, H. C. Long and Martha M. Long, (who are husband and wife,) as a homestead ever since the year 1856, and that from the said year 1856 up to the year 1859 said homestead was out of the limits of any incorporated town or city, and was less than one hundred and sixty acres of land, which was used from 1856 to the present time as farming land by said H. C. Long and Martha M. Long, and by them occupied as a residence for themselves and family.

"2. In the year 1859, said farming land was included in the city limits of Wyandotte by a special act of the legislature incorporating said city, approved January 29, 1859. But the defendants still continue to occupy said land and use the same for farming purposes, and still continue to so use the same; that defendants have never had said land laid off or platted into town or city lots.

"3. On the 12th day of March, 1879, the legislature, by a special act of that date, reduced the territorial limits of said city so as to exclude from its limits said land; that said land was outside of the city limits, under the act of 1879, at the time the contract sued upon was entered into between the plaintiff and H. C. Long, and Martha, his wife.

"4. Said contract of April 22, 1881, was not signed or assented to by said Martha M. Long, wife of said H. C. Long.

"5. H. C. Long, on the 22d day of April, 1881, entered into a written agreement with plaintiff for the sale of land first described in the petition, being a tract of about thirty-three acres, to plaintiff for the sum of $8,000; $500 to be paid April 28, 1881, the balance to be secured by mortgage at three years from date of contract, at 8 per cent. interest.

"6. On the 25th day of said April, defendant H. C. Long agreed to convey the same tract of land of thirty-three acres to one Rogers, for the sum of $8,500.

"7. Afterward, on the 25th day of said April, defendants H. C. Long and Martha M. Long entered into a written agreement for the sale of said thirty-three acres to S. M. Ford, of Kansas City, for the sum of $8,500.

"8. On the 28th day of said April, the time fixed for the first payment under plaintiff's contract with defendant H. C. Long, plaintiff tendered to defendant H. C. Long the sum of $500, that being the first payment under the terms of said contract, which money was refused by said Long, who then and there repudiated said contract. Plaintiff was then and

always has been and now is willing, able and anxious to comply with all of the specifications of said contract.

"9. On December 24, 1881, defendants H. C. Long and Martha M., his wife, deeded $31\frac{3}{10}$ acres (the second tract described in the petition) of said land to Elizabeth I. Crockett, for the sum of $8,500, reserving and retaining about two acres of said tract, worth $1,200; said defendant Crockett having full notice of the contract between plaintiff and defendant H. C. Long at the time of said conveyance to her."

The court upon the foregoing facts concluded:

"1. By the act incorporating said city of Wyandotte in 1859, such homestead was not destroyed, nor the defendants' rights thereto divested.

"2. Said act of March 12, 1879, is a valid and constitutional law, and in full force as such.

"3. The said contract of April 22, 1881, is void and of no effect."

Exceptions were properly taken by the plaintiff to Nos. 1, 2 and 3 of the findings of fact, and to all of the conclusions of law. The plaintiff brings the case here.

*B. Gray*, plaintiff in error, for himself; *N. Cree*, for plaintiff in error.

*John B. Scroggs*, and *Hiram Stevens*, for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: The question for our consideration and determination in this case involves the constitutionality of the act of the legislature of this state entitled "An act excluding certain farming property from the corporate limits of Wyandotte city, Kansas," approved March 12, 1879. By the act of the territory of Kansas incorporating the city of Wyandotte, approved January 29, 1859, the land in controversy was embraced within the corporate limits of that city. The special act of March 12, 1879, attempted to exclude this land from the city limits. It is contended on the part of the plaintiff that this act conflicts with various sections of the constitution. Section 17 of article 2, and §§ 1 and 5 of article

12, are specially referred to as antagonistic to the act. The former provides that "in all cases where a general law can be made applicable, no special law shall be enacted." And § 1 of article 12 forbids the legislature to pass "any special act conferring corporate powers;" and it further provides that "corporations may be created under general laws, but all such laws may be amended or repealed." Section 5 of said article reads: "Provision shall be made by general law for the organization of cities, towns, and villages; and their power of taxation, assessment, borrowing money, contracting debts, and loaning their credit, shall be so restricted as to prevent the abuse of such power."

At the time of the adoption of the act of March 12, 1879, the general statute relating to the incorporation of cities of the second class — to which class Wyandotte city belongs — then in force, and which took effect March 13, 1872, provided that:

"The city council, in their discretion, may add from the territory adjacent to the city limits, as defined and existing at the date of the approval of this act, such additional territory as they may deem proper, and shall in every case have power to increase or diminish the city limits in such manner as in their judgment and discretion may redound to the benefit of the city: *Provided,* That in no case shall any adjacent territory, except when subdivided into town lots, be added to the limits of a city without the consent, in writing, of the owners of the majority of the whole number of acres owned by residents of Kansas of the territory proposed to be added."

It is claimed that as there is a general law upon the statute book under which the city limits of Wyandotte could be diminished, the special act of March 12, 1879, could not be enacted, because not only could a general law be made applicable, but one was actually existing. Further, it is said that if the special act be held valid, it operates to limit the general statute, and therefore defeats so much of § 17, article 2 of the constitution, as ordains that "all laws of a general nature shall have a uniform operation." This argument presents a very troublesome question, which is difficult of

solution within the adjudicated cases of this court.   In *The State v. Hitchcock*, 1 Kas. 178, it was decided that the mere fact that certain results can be accomplished by a general law do not necessarily render invalid a special law passed to effect them.   It was said therein that "the legislature must determine whether their purpose can or cannot be expediently accomplished by a general law."   From this decision it is urged that the power to pass special laws carries with it the power to limit the operation of a general law by a special law, and to some extent therefore to defeat the provision that all laws of a general nature shall have a uniform operation. (*Beach v. Leahy*, 11 Kas. 23; *Comm'rs of Norton County v. Shoemaker*, 27 Kas. 77.)

On the other hand, it has been decided that where the provisions of a general law are attempted to be limited by a separate act which defeats the uniform operation thereof, the special act must fall, while the general law stands. (*Darling v. Rodgers*, 7 Kas. 592; *Robinson v. Perry*, 17 Kas. 248.) Within the former decisions it is somewhat doubtful whether the special act of March 12, 1879, conflicts with §17 of article 2.   In the case of *Atchison v. Bartholow*, 4 Kas. 124, this court decided that article 12 of the constitution is restrictive of the legislative power of this state conferred by §1 of article 2, and was inserted to prevent abuses.   It was further decided therein, that said §§1 and 5 of article 12 of the constitution apply as well to municipal corporations as to other corporations.   The court also held that within the terms of §1 no corporate powers can be conferred by special legislation, and that §5 of article 12 was intended to regulate the general grant of power to organized municipal corporations, and to compel the legislature, when it took action upon the subject, to do so by general law.   In the opinion in *Atchison v. Bartholow*, supra, it was said:

"The organization of cities and towns by special enactment is demonstrably equally impolitic.   The members from a certain city or town, for purposes of individual aggrandizement or immunity, might desire a change in their organic

law. A bill is framed and submitted, and when action is to be taken thereon, the body is informed that it expresses the views of the representation of the locality immediately affected — whereupon no objection is made, and the work is done; whereas, if the same thing were sought to be made applicable to the localities represented by a majority of the members, the measure would be spurned from the halls of legislation. This same city of Atchison furnishes an example of what could be accomplished under this system. An influential member, being a large real-estate owner therein, sought to exempt it from municipal taxation, and at the same time kept subject thereto the property of others similarly and not so eligibly situated. And the thing was accomplished in the manner above indicated, much to the chagrin of his unfortunate constituents. To prevent just such abuses and others equally meretricious, the twelfth article was inserted in the constitution."

In the year 1867, the legislature of the State attempted to extend the corporate limits of the city of Wyandotte by a special act. (Laws of 1867, p. 284.) This act was held void, as in contravention of §§ 1 and 5 of article 12 of the constitution. (*Wyandotte v. Wood*, 5 Kas. 603.) It must be conceded, we think, that the special act of March 12, 1879, and all similar acts, are contrary to the policy intended to be carried out by the provisions of said article 12; and we think it must also be conceded that acts of the character of the one under discussion are generally inspired by personal interest, and are within the mischief intended to be prevented by the provisions of that article. In view of the provisions of the organic law, therefore, such acts are not to be favorably considered. At the very time that the special act of 1879 was passed to diminish the limits of Wyandotte city, there was in force a general statute giving the city council full power in the premises, if in their judgment the diminishing of the city limits would redound to the benefit of the city. The general statute leaves the increasing or the decreasing of the limits of organized cities of the second class to those whose interests and official duties will prompt them to act with prudence, and who, because of their interests and duties, and because they

relate to matters that must come under their own view and observation, are much better qualified to decide thereon than the representatives at the capital of the state. After a city is properly incorporated, the right of the state to interfere and control by special legislation any matters solely affecting the city, is not only unjust interference and of doubtful expediency, but is also contrary to the general policy of the organic law as ordained in said § 12 of the constitution.

In answer to all this, it is submitted that the diminution of the territoral limits of Wyandotte city does not confer corporate powers; that the special act does not attempt to delegate or confer any power upon the city; that no new or enlarged police power was given or conferred; that no additional power to borrow money was delegated; that no additional power of taxation was given; in short, that no power not before had was conferred. This reasoning is plausible, but not sound, in view of the restrictions contained upon the legislative power of the state in article 12. Legitimately, the logic of this reasoning leads to the conclusion that while the corporate powers of a city cannot be added to or enlarged by a special act, they may be cut down or decreased by such an act. The exercise by the legislature of the authority to cut down or decrease the corporate powers of a city by special acts would virtually defeat the provision that corporations are to be created by general laws, and cities organized by general laws could have their charters modified, changed or limited by special acts, provided the acts do not enlarge or increase the corporate powers. Such was not the purpose by the terms and restrictions of said article 12. Not only are corporations to be created under general laws, but all changes or limitations of their powers ought also to be by general laws. Not only are cities to be organized in accordance with the provisions of a general law, but their powers, if changed or limited at all after their incorporation, should be so changed and limited by general law. The boundaries of the city of Wyandotte are defined by its original act of incorporation, and any changes in those boundaries must necessarily contract or en-

large the sphere of its municipal jurisdiction, and therefore constitute so far an amendment of its charter or act of incorporation. That the legislature may delegate by a general law authority to municipal corporations to make changes in their boundaries, is unquestioned. To carry out the intention of the organic act, a general law has been adopted permitting cities of the second class to change their boundaries; but we do not think that a special act to contract or enlarge such boundaries would be constitutional. Of course, if it were not for the restrictions of our constitution, the legislature would have authority to amend by special acts the charters of our cities, to enlarge or to diminish their powers, and extend or limit their boundaries. But as the fixing of corporate boundaries is one of the important and essential acts respecting the organization of cities, such boundaries ought not to be and cannot be contracted or enlarged by special acts.

Again, if the special act of March 12, 1879, is to have force, cities of this state, although organized under the general statute, may have their powers changed thereafter, by special acts diminishing or taking them away. Therefore we might have the anomalous condition existing in the state, that several cities of like population, organized under the same general statute, with the same powers, rights and franchises, thereafter, without any change of population, could have new charters or amendments to suit their wants, all different, and all by special acts, if such special acts decreased or diminished the original powers. Therefore, while provision would be made in the first instance by general law for the organization of cities, towns and villages, the purpose of the organic law would be defeated by the subsequent enactment of special acts limiting and diminishing the provisions of the general law. In this way, also, in an unusual manner, and by indirection, not only could corporate powers be changed by special acts, but to some extent the corporate powers by indirection could be conferred by such special acts.

The only possible defense for the act of March 12, 1879,

is the argument of convenience. This argument, when presented to support this special act, and to evade the constitutional provisions contained in said §§ 1 and 5, of article 12, does not commend itself to our judgment. It is dangerous in principle, and, if acceded to in cases like this, pernicious in results. We are referred to *Brewis v. Duluth*, 13 Fed. Rep. 334, and 1 Dillon on Municipal Corporations, §§ 124 and 168, as establishing the doctrine that cities are mere political subdivisions of the state, at all times subject to legislative control, and to be divided, subdivided and abolished. To this general doctrine we agree fully; but the limitations of legislative authority to which we have already referred, existing in our organic act, forbid contracting or enlarging by special acts the boundaries of the cities of this state. The case of *Luerhman v. Taxing District*, 2 Lea, 425, is also called to our attention. That case is not exactly parallel. The constitution of Tennessee forbids the powers of a corporation to be diminished by special laws, and a majority of the court decides that an act which repeals the charter of a single municipal corporation is not in conflict therewith. But that case was decided by a divided court; Turney, J., and Freeman, J., delivering lengthy dissenting opinions.

As a final argument in support of the judgment of the district court, it is urged that as the land was the homestead of H. C. Long and wife, prior to the territorial act of January 29, 1859, incorporating the city of Wyandotte, all of it continued to be their homestead, as it was not within the power of the legislature to divest them of their homestead right by the extension of the corporate limits of Wyandotte over it. We do not perceive that this question is in the case. It was admitted upon the trial by the parties, that under the charter incorporating the city of Wyandotte, in the year 1859, the land was within the corporate limits of the city. Also, that in the year 1879 the land was attempted to be excluded from the city limits, by the special act of March 12, 1879; that the point in dispute was as to the constitutionality of the special act of March 12, 1879; that if this act is valid, the

land at the date of the sale was outside of the city limits, and occupied as a homestead; that if this special act is void, the land is within the city limits, and not a homestead. The agreement as to the facts is conclusive upon the parties, and the trial court had no right to receive evidence contrary thereto. Any finding of the court contrary to the facts stipulated, or to the issues submitted to the court, cannot be considered. (*Brown v. Evans*, 15 Kas. 88; *Carpentier v. Small*, 35 Cal. 346; *Boardman v. Griffin*, 52 Ind. 101; *Kemp v. Smith*, 7 Ind. 47; *Sidener v. Essex*, 22 Ind. 201; *Johnson v. Wright*, 19 Ga. 509; *Dingham v. Board of Supervisors*, 8 Minn. 441.)

If the question of the occupancy of the land as a homestead prior to January 29, 1859, was properly before us, the defendants would not be benefited thereby. Possibly within *Finley v. Dietrick*, 12 Iowa, 516, the act of incorporation of January 29, 1859, although legally embracing the land in question, as a part of Wyandotte city, did not take away from Long and wife their homestead right over any part of the property, as the land was not platted. (Session Laws of 1858, § 2, p. 236.) Exemption, however, of the real estate for a homestead, prior to the admission of Kansas as a state, was only a statutory bounty or privilege, and when the statutory shield was removed, the homestead right did not exist thereunder. An exemption existing by statute may be reduced or withdrawn by statute. "When the law is gone, the right is gone." (*Harris v. Glenn*, 59 Ga. 96; *Sparger v. Cumpton*, 54 Ga. 359; *Bull v. Conro*, 13 Wis. 233; *Parker v. King*, 16 Wis. 223; Cooley's Const. Lim. 383.) The contract of sale is dated April 22, 1881, and we are to look to the constitution of the state, and the provisions of the statute conforming thereto, as defining and settling the homestead of Long and wife. Thereunder, one acre of land only, together with all the improvements thereon, is exempt as a homestead, if the land be within the limits of an incorporated city or town. The land in controversy was legally included within the limits of Wyandotte city, by the act of incorporation of January 29, 1859. The special act of March 12, 1879, attempting to exclude it from

the corporate limits of that city, is void. At the date of the contract of April 22, 1881, all of the land in controversy, consisting of about thirty-three acres, was within the limits of an incorporated city, and therefore one acre only, together with all improvements on the same, could be claimed, even if there had been no sale thereof, by Long or his wife as a homestead. (*Sarahas v. Fenlon,* 5 Kas. 592.)

The judgment of the district court must be reversed, and the cause remanded.

All the Justices concurring.