THE STATE OF KANSAS v. CHARLES CAREY.

No. 10383.

1. COMPLAINT — *Verification — Warrant — Plea in Abatement.* An objection to a warrant that the person who verified the complaint, although in positive form, had no knowledge of the facts, save such as were based upon rumor, hearsay, information, and belief, and a subsequent plea in abatement to an information for a felony on the same ground, were properly overruled without any evidence thereon.

2. CAPITAL OFFENSE — *Refusal to Plead.* It is no ground for a refusal to plead that the copy of the information, which paragraph 5223, General Statutes of 1889, requires to be delivered to the defendant charged with a capital offense, or his counsel, is certified by the clerk without attaching the seal of the court thereto.

3. HOMICIDE — *Declaration of Defendant — Evidence.* A declaration by the defendant to a bystander, very shortly before the homicide, to the effect that he was afraid of the deceased and another man with him and near by, neither of them making any hostile demonstration, did not form part of the *res gestœ*, and, if admissible in evidence on any ground, its exclusion under the circumstances of this case was not material error.

*Appeal from Wyandotte District Court.*

ON May 1, 1895, a complaint under oath, in positive form, was filed before George M. Hughes, a justice of the peace of Wyandotte county, charging the defendant

with murder in the first degree by shooting with a pistol and killing James Clune, on April 30, 1895, at and within said county. A warrant was issued upon said complaint, and the defendant was arrested, and brought before said justice of the peace. Upon such arrest the defendant made objection to the validity of the warrant, on the ground that Thomas Cahill, who made oath to the complaint, had no knowledge of the facts stated therein, save such as were based upon rumor, hearsay, information received from others, and belief; that he did not produce any witnesses before the justice who knew the facts stated in the complaint; that he was not a witness who could give any competent testimony upon the trial; that, notwithstanding he verified said complaint as true, yet having no knowledge except as before stated, the complaint did not constitute sufficient probable cause to justify the issue of said warrant, nor the arrest of the defendant, nor for any other purpose, and that all the proceedings based thereon were and are without jurisdiction. Presumably, these objections were overruled, although the record does not so state, but an information against the defendant was filed in the district court on May 11, 1895. On June 3, 1895, the defendant filed a plea in abatement on the foregoing grounds, and he demanded a trial by jury of the truth of the facts contained in the plea. The state answered the plea by a general denial, and the defendant again demanded a trial of the issue by jury, which was overruled. The defendant then offered evidence in support of his plea, but the state objecting, the testimony was excluded and the plea overruled. On the next day the defendant was arraigned but refused to plead, on the ground that no copy of the information duly certified by the clerk under his hand and the seal of

the court had been served upon him, and he presented in evidence the copy served, which appeared to be full, true, and correct, and the same was so certified by the clerk on May 28, the day of its service, but no seal was attached to the certificate of the clerk. The objection was overruled, and the defendant required to plead, but he stood mute, and the court directed the entry for him of a plea of not guilty. On the trial the defendant was found guilty of murder in the second degree, and was, on July 5, 1895, sentenced to imprisonment at hard labor in the penitentiary for a term of 15 years. Other facts appear in the opinion.

*F. E.* and *J. A. Smith,* for appellant.

*F. B. Dawes,* attorney general, *Samuel C. Miller,* county attorney, and *I. F. Bradley,* for The State.

The opinion of the court was delivered by

MARTIN, C. J. : I. The plea in abatement is urged on the authority of *The State v. Gleason,* 32 Kan. 245 ; but in that case the prosecution was commenced in the district court, and the information was verified by the county attorney only upon information and belief. Section 15 of the bill of rights provides that "no warrant shall issue but on probable cause supported by oath or affirmation," and this court held that the verification of the information was neither an oath nor an affirmation ; and this position is supported by *City of Atchison v. Bartholow,* 4 Kan. 124, 139, 140 ; and *Thompson v. Higginbotham,* 18 id. 42, 44. In the Gleason case, therefore, no legal foundation had been laid for issuing the warrant, and, its validity having been challenged at the first opportunity, this court held that the defendant ought to have been discharged until the information should be veri-

fied, and a new warrant issued thereon. In the case
at bar the complaint was regular in form, and was
supported by the oath of Thomas Cahill, and this
conferred jurisdiction, and authorized the justice to
issue the warrant without the calling in of other wit-
nesses, as authorized by section 36 of the code of crimi-
nal procedure. (¶ 5099, Gen. Stat. 1889.) Counsel
for defendant cite no authority in support of their
contention, that on a plea in abatement the question
can be tried either with or without a jury as to the
extent of the knowledge of the person who makes
oath to the complaint, and we know of none. It is
therefore quite immaterial in this case whether, upon
a plea in abatement raising an issue of fact, the trial
of such issue should be by the court or by a jury.
The complaint was in due and legal form, as was the
warrant issued upon it, and we must hold that the
arrest of the defendant was fully authorized by law,
and that the court committed no error in refusing to
hear evidence in support of the plea.

II. It was the duty of the clerk of the court to make
out a copy of the information, and cause the same to be
delivered to the defendant, or his counsel, at least 48
hours before the arraignment. (¶ 5223, Gen. Stat.
1889.) There is no specific requirement of a certifi-
cate by the clerk under the seal of the court to the
correctness of the copy, although it is the better prac-
tice to attach such certificate and seal. The certificate
of the clerk here was in good form, except that the seal
was not affixed ; but we are required to give judgment
without regard to technical errors or defects, or to ex-
ceptions which do not affect the substantial rights of
the parties. (¶ 5355, Gen. Stat. 1889 ; *Laurent v. The
State*, 1 Kan. 313 ; *Millar v. The State*, 2 id. 175 ; *The
State v. Winner*, 17 id. 298.) There is no claim that

the copy of the information delivered to the defendant was not full, true, and correct, as certified by the clerk, and, if it was irregular to omit the seal, the error was immaterial, and not prejudicial to the defendant.

III.  James Clune was killed by the defendant on Tuesday, April 30.  The defendant claims that the act was committed in self-defense.  On the Sunday night next preceding, Clune, one O'Brien, the defendant, and perhaps some others, were engaged in an affray, and there was considerable evidence that on Sunday night, Monday and Tuesday Clune made threats that he would kill the defendant on sight, and some of these threats were communicated to the defendant.  On Tuesday the defendant and one Buffington were driving a team through an alley in Kansas City, Kan., when they saw Clune and O'Brien with some other persons in a barn abutting on the alley. The defendant offered to show by his own testimony and that of Buffington that he then expressed his fears to Buffington in words something like these : "There are those fellows.  They will get me."  But the evidence was excluded on the ground that it was a declaration of the defendant in his own interest.  Counsel claimed that, as the homicide occurred only about three minutes afterward, and within 150 feet from the place where this expression is alleged to have been used, it ought to have been admitted, if not as part of the *res gestæ*, at least as showing the state of mind of the defendant very shortly before the fatal shot was fired, and which might be presumed to continue until that event.  Buffington was allowed to testify that at this time he told the defendant, in substance, to sit still, and they would n't hurt him, which implies that the defendant had expressed or manifested some fear.  The evidence for the prosecution tended to

show that the defendant and Buffington drove on a little way and stopped at Buffington's house on the alley, and that Clune and O'Brien, coming out of the barn, passed by the wagon, and when they were opposite the horses the defendant, without warning or present provocation, shot Clune, who fell dead, and the defendant then jumped from the wagon, running after O'Brien, and firing one shot at him. The defendant testified that when Clune was opposite the horses he reached down and got a brickbat and threatened to kill the defendant with it, when he shot; and his statement was in a measure corroborated by Buffington. Under the circumstances, we hold that the court did not err in excluding the declaration of the defendant to Buffington. It was not part of the *res gestæ*. No trouble had occurred that day, and neither Clune nor O'Brien had made any hostile demonstration at that time. The declaration was of a self-serving character, such as a man might easily frame in anticipation of the commission of a crime, to be used afterward in exculpation of his guilt. (1 Greenl. Ev. § 108 ; *The State v. Montgomery*, 8 Kan. 351, 361.; *The State v. Pomeroy*, 25 id. 349, 351.) And, even if it were admissible, we think its exclusion would not be material error, for the state of mind of the defendant might well be inferred from the other testimony in his behalf on the hypothesis of its being true. The defense was based entirely upon what took place after the team stopped at Buffington's house, and Clune and O'Brien had passed the wagon. If the jury gave credit to the defendant's testimony as to the hostile demonstration with the brickbat and the threats said to accompany it, evidently they did not believe that the defendant was justified in taking Clune's life.

No other points having been argued orally or in the defendant's briefs, the judgment must be affirmed.

All the Justices concurring.