Cruce *vs.* The State.

---

JOHN P. CRUCE, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

1. Discretion in refusing continuance not abused, full diligence to procure the absent witnesses not having been exercised.
2. When two are tried jointly for an offence of which one may be con-

victed, though the other be acquitted, the right of peremtory challenge, in its whole extent, is of the same practical importance to each as if he were being tried severally.   By going to trial as the state has indicted them, that is jointly, the prisoners do not waive any any right of peremptory challenge.   Each is entitled to his full statutory allowance.   If the state is not prepared to afford the full allowance to each in a joint trial, it should demand a severance, and try the prisoners separately, unless they stipulate expressly to unite in their challenges, in which case they will be bound to do so.   Without such express stipulation, the court cannot oblige them to unite in their challenges.

3.  Where two are tried jointly, and a witness introduced by one is also examined by the other, both should be considered as having introduced evidence, and the state will be entitled to conclude.

4.  Where two persons are indicted and tried jointly for robbery, the the jury may return, at the same time, two separate verdicts: a verdict as to one defendant, of guilty, and a verdict as to the other, of not guilty.   It is more regular to embrace both findings in the same verdict, but two verdicts returned together are to be read and treated as one.

## JACKSON, Judge, dissenting.

1.  Trial by jury involves, as an important element, the selection of the jury; and if the prisoners choose to go to trial jointly, they must challenge jointly; if they wish each his full, separate challenge, then they must choose to sever.

2.  The time for them to choose is before the trial is begun; if they, then, choose to go to trial together, all the consequences of joint trial, including joint challenges, follow, and in a case of robbery, both together are entitled to only twenty challenges, and the state to ten.   Any other rule would breed great confusion, and entitle the prisoners, if many, to numerous challenges, and the state to half as many, and might greatly embarrass, if not "*block the trial*," by all the prisoners never agreeing to the same jury until the vicinage would be exhausted.

3.  Where the complaining prisoner had every juror, whom he challenged, set down for cause, he was not hurt; and if no complaint was made, or could be made, that the jury was otherwise than perfectly impartial, a new trial should not be granted, even if the court had ruled wrong on an abstract point which worked no damage to anybody.

Criminal law.   Continuance.   Jury.   Severance.   Practice in the Superior Court.   Argument.   Verdict.   Before

JUDGE LESTER. Cherokee Superior Court, February Term, 1877.

For the facts, see the opinions.

GARTRELL & WRIGHT, for plaintiff in error.

THOMAS F. GREER, solicitor general, for the state.

BLECKLEY, Judge.

1. The showing for continuance was hardly sufficient in respect to the element of diligence. There was no abuse of discretion in denying the continuance.

2. Did the court commit material error in reference to the right of peremptory challenge? It is necessary, in the first instance, to ascertain whether the presiding judge did, in fact, make any decision to the effect that the prisoners, both together, were entitled to but twenty challenges, and that each severally was not entitled to that number. The bill of exceptions states, that after the panel was put upon the prisoners, and the first juror was sworn upon his *voire dire*, counsel for Cruce moved the court to allow Cruce the twenty peremptory challenges to which a prisoner charged with the offense of robbery would be entitled, which number of challenges the court refused to Cruce, and restricted the two prisoners to twenty challenges. The judge certifies that the bill of exceptions is true, adding that the same, with the brief of evidence, and the judge's explanation on the motion for new trial, contains all the evidence material to a clear understanding of the errors complained of. In the record is the motion for new trial, and annexed to the motion is a certificate, signed by the judge, in which is found the explanation referred to. The explanation affirms that Cruce did not challenge any juror without receiving the benefit of the challenge, and that the only *decision* made by the court on the subject of challenges was, that, as the pris-

oners had not elected to be tried severally, but desired to be tried jointly, one of them could not accept and the other reject, a juror, and thus, by antagonistic demands, block the trial.  Most probably, when the judge certified to the bill of exceptions, he intended to re-affirm the truth of this explanation, but he omitted to do so in direct terms ; whereas, he directly certified that the bill of exceptions was true. It is impossible that both should be true, unless the word *decision,* which is italicized by the judge, is inapplicable when the court refuses twenty challenges to one prisoner alone, and restricts both prisoners to that number.   But the word is applicable ; such a ruling, being made on a motion to settle the number of challenges, is a *decision* on the subject of challenges.   So that, if the bill of exceptions is true, (and the judge certifies. that it is,) there was a decision to the effect stated.   In the bill of exceptions, that decision is excepted to and assigned as error, quite independently of the motion for new trial. · It is, therefore, before this court in a way which would enable the court to review it, if no motion for new trial had been made.   Having reached the conclusion that there was such a decision, and that it is here for review, the next question is, whether it was material. This depends upon whether, assuming it to have been erroneous, it was hurtful, or might have been hurtful to the plaintiff in error.   It was made at an early stage, when the first juror was called and put upon his *voire dire.*   The court was not obliged to make it then, but the court did make it then, and the natural effect of it was to induce the prisoners to be more economical of their challenges than they otherwise would have been.   Whoever, as counsel, has assisted in the selection of a jury in a case of felony, can bear witness to the constant reference which the mind makes to the stock of challenges at command.   When the stock is low, juror after juror is sometimes accepted, though far from being satisfactory, for fear of reaching empty-handed, lower down on the list, a group of names much more objectionable.

To expend a challenge on one man whom you would like to reject, would perhaps leave none to be expended on another whom you must reject. Sometimes challenges become very precious. Life or liberty may depend upon them. For the court to rule in the outset that there can be, in the aggregate, but half as many challenges as the law allows, is hurtful in tendency, no matter how few challenges may afterwards be made, and no matter whether all that are made be allowed or not.

Finally, was the decision erroneous? The prisoners were indicted for robbery. "Robbery by open force or violence, shall be punished by imprisonment and labor in the penitentiary for any time not less than four years; nor longer than twenty years. Robbery by intimidation, or without using force and violence, shall be punished by imprisonment and labor in the penitentiary for any time not less than two years nor longer than five years." Code, sections 4390, 4391. "*Every person* indicted for a crime or offense which may subject him or her, on conviction, to death, or to four years' imprisonment or longer in the penitentiary, may peremptorily challenge twenty of the jurors empaneled to try him or her." Code, section 4643. "And if twenty men were indicted for the same offense, though by one indictment, yet every prisoner should be allowed his peremptory challenges of thirty-five persons. . . . And if there were but one *venire facias* awarded to try them, the persons challenged by any one should be withdrawn against them all." 2 Hale's Pleas of the Crown, 268; Bacon's Abr., Juries, E. 9. "When the right of challenging exists, though several defendants are tried by the same inquest, each individual has a right to the full number of his challenges; but if they refuse to join in their challenges, they must be tried separately, in order to prevent the delay which might arise from the whole panel being exhausted." 1 Chit. Cr. Law, 535. "Where the trial is joint, the right of peremptory challenges is in no degree narrowed or affected. Each prisoner has a right, in such case, to chal-

lenge the full number, and is unaffected, in this respect, by
what the other prisoners do. If, therefore, in a capital
offense, where twenty peremptory challenges are allowable
by law, there is a joint indictment and joint trial of several
persons, each may challenge the whole number to which he
is entitled; and if there be two on trial, the challenges may
extend to forty; if three, to sixty, etc." Story, J. 4 Ma-
son, 15). "Upon a joint trial, each prisoner may challenge
his full number, and every juror challenged as to one, is
withdrawn from the panel as to all the prisoners on the
trial, and thus, in effect, the prisoners in such a case possess
the power of peremptory challenge to the aggregate of the
numbers to which they are respectively entitled. This is
the rule clearly laid by Lord Coke, Lord Hale and Sergeant
Hawkins, and, indeed, by all the elementary writers." 12
Wheaton, 481. "Where there is a joint trial under a joint
indictment, each defendant may challenge the whole num-
ber of jurors to which he would be entitled if tried sepa-
rately." 26 Ala., 107. See 15 Ill., 536. "It has from the
earliest times been held, both in England and the United
States, that, where the right of peremptory challenge exists,
each of the several defendants may challenge his full number,
while, at the same time, he has the benefit of the challenges
made by his co-defendants." 1 Bishop Cr. Proc., §967.

When two persons are tried together, for an offense that
requires their joint action or concurrence, such as an affray,
the acquittal of either will operate as an acquittal of both ;
hence, in such a case, it has been held, in effect, that they
may be required to join in their challenges. 13 *Ga.*, 324.
But even this exception to the general rule is denied else-
where. 6 Ohio, 86. There is, however, so far as we know,
no conflict of authority as to the rule itself. In criminal
trials, the *personnel* of the tribunal is important, and any sub-
stantial right in respect thereto should be sacredly guarded.
When the prisoners, though jointly indicted and tried, can
be severally convicted or acquitted, the composition of the
jury is of precisely the same practical concern to each of

them, as if each was being tried severally. In the present case, one was convicted and the other acquitted. They went to trial under a declaration by the state, through its public law, that *every person* in their situation might challenge, peremptorily, twenty jurors. A government, in moving against offenders, must abide faithfully by its own laws. Any government that fails to do so, may inspire fear, but can never command respect. If the state is not prepared to allow each prisoner his statutory number of challenges, and the prisoners do not stipulate to join in their challenges, that is good cause for ordering a severance. Plowden, 100; 3 Salk., 81; 4 Mason, 165, 166; 12 Wheaton, 481, 484; 1 Bish. Cr. Proc., §§968, 969, 970; 1 Chit. Cr. Law, 535. Good cause existing for trying severally, the court may order a severance, though the prisoners may desire to be tried jointly. *Stewart vs. The State,* 58 *Ga.,* 577. While it may also be the right of the prisoners to sever (compare 34 *Ga.,* 10, with 37 *Ib.,* 80), there can be no doubt of their right to forbear to sever on their own motion. By exercising the latter right, why should they lose any of their challenges? The state may force on them a separate trial, unless they will consent expressly to join in their challenges. Why, then, should they be forced to yield a part of their challenges because they are willing to be tried jointly, and refuse to demand separate trials? If the state did not wish to offer them the advantages of joint trial, why were they indicted jointly? Why should the election be put upon them, when the state can elect for itself? The state has two opportunities for electing: first, when it prefers the indictment, and again at the trial; they, less privileged, have but one opportunity. When they go to trial in the manner in which the state has indicted them, have they not reason to conclude that she is ready to try them in that manner, and grant them all their legal rights? It is certainly possible for the state to try two persons jointly, and afford to each his full complement of challenges. The power of the court to order in successive panels is unlimited. Code, section 3935.

And the sheriff may cause the constables to summon any number of qualified persons to be in attendance, in advance, so that tales jurors may be obtained with convenience. 27 *Ga.*, 648. As to keeping accounts between each prisoner and the state while the challenging is in progress, there is no practical difficulty. A challenge would be charged to that one of the prisoners by whom it was made, and the state, on making a challenge upon its part, would simply charge itself with the same, in respect to one or the other of the prisoners at its option. Thus it would be known when each prisoner had exhausted his legal number, and when the state had exhausted hers as to each of the prisoners respectively. True it is that one prisoner might wish to accept and the other might wish to reject a particular juror ; but challenge is rejection (12 Wheat, 482), and the effect of rejection is not to block the trial, but to try with a jury satisfactory to both defendants, with no other exception than that which might result, in any instance, from the exhaustion of challenges before a full jury was obtained. The risk of such a contingency would attend all trials alike. But were it impossible to afford a joint trial, on the terms of allowing to each prisoner his full measure of challenges, the consequence would be, not that he should lose any of his challenges, but that he should be tried in some way in which all his challenges could be duly allowed. There is, in our own state, a recent instance of a joint trial in which the presiding judge held that the peremptory challenges on the part of the prisoners might extend to one hundred. 37 *Ga.*, 82. In T. U. P. Charlton, 16, the objection as to the number of challenges was taken in arrest of judgment. Clearly, it was not good for that purpose, and, therefore, what the court said upon the general subject was mere *obiter*. Besides, the judgment in that case was, in fact, arrested upon another ground. It would be strange if, on putting a man to the bar to plead, with a statutory declaration that he should have twenty peremptory challenges, it would be necessary for him to claim them expressly, on

pain of being held to have waived a part of them. A prisoner may repose silently and securely upon every substantial right which any statute of the state gives him.

3. The two verdicts were virtually but one. They were returned at the same time. In point of form, the whole finding should have been embraced in one statement of it, but dividing it, as was done, did not vitiate.

4. We need not decide with whom would have been the right of concluding the argument if the plaintiff in error had not introduced any witness, nor joined in the examination of any witness introduced by the other defendant. It appears that he propounded questions to one or more witnesses of the latter class. By so doing, he made them his own. He introduced evidence. It is a misnomer to call such an examination a cross-examination.

Judgment reversed.

WARNER, Chief Justice, concurred, but furnished no written opinion.

JACKSON, Judge, dissenting.

I differ from my brethren in respect to an important question of practice, which arises in this case.

Three defendants were jointly indicted, and two of them tried together. Cruce was found guilty, and brought his case to this court for review on several grounds of error.

In respect to the sufficiency of the evidence to sustain the conviction, and the refusal of the court to continue the case, there is no disagreement in this court. We all think the evidence sufficient, and that the presiding judge did not abuse his discretion in overruling the motion to continue.

But the defendant makes another question on which we differ. He says that he demanded the right to have twenty peremptory challenges himself, independently of those of his co-defendant, and that this right was denied to him. The record does not disclose when he made the demand; at what

stage of the trial; whether at the moment that the panel
was first put upon him, or during the progress of the pro-
curement of the jury, and in what particular stage of that
progress. The bill of exceptions asserts that it was when
the first juror was sworn, but the judge's certificate, which
controls, leaves it uncertain.

The ground taken in the motion for a new trial, is as fol-
lows:

" Because one Benj. A. Gholston was jointly indicted with
said defendant, and they did not elect to sever, and in chal-
lenging jurors, the court refused to allow the said defendant
the twenty challenges to which the defendant is entitled in
a case of robbery, but restricted the two defendants to the
number allowed, to-wit: twenty challenges."

About which ground the judge's certificate says: " The
defendant, Cruce, did not challenge any juror without re-
ceiving the benefit of the challenge, and the only decision
made by the court on the subject of challenges was, that as
the defendants had not elected to be tried separately, but
*desired* to be tried jointly, when a juror was put upon the
prisoners, that one of them could not accept and the other
reject the juror, and thus, by antagonistic demands, block
the trial of the case."

So that the naked question made, is whether, when two
defendants do not elect to be tried separately, but " *desire* "
to be tried jointly, and at any stage of the process of pro-
curing the jury, insist that they shall have forty peremptory
challenges instead of twenty, and when every juror objected
to by either of them, or by the one complaining here, is set
down, and not sworn to try the case, and thus he could not
have been hurt by the ruling complained of, shall the ruling
be pronounced error, and a new trial be granted on account
thereof? To state the question is, to my mind, to answer
it. Before any defendant can ask to have his case tried
again, he ought certainly to show, either that he was hurt,
or could have been hurt, by what the judge did; but this
record shows that this defendant could not have been hurt;

for every juror objected to was ruled incompetent by the judge; so that the twenty challenges allowed were not exhausted, and no harm was done in the not allowing forty challenges. It does seem clear to me that the bill of exceptions should show wherein the defendant was hurt; which juror he challenged and his challenge not allowed; and thus how, practically, he was injured by any ruling of the judge; and so this court has ruled substantially.

Again, if it be the privilege of the defendant, when tried with another, to double the number of peremptory challenges to which, in practice in this state, the defense is entitled, surely he should demand it when the panel is first put upon him, so that the court might, before a part of the jury had been obtained and sworn to try the case, direct that he be put upon terms, or be tried separately. But whether this was done in this case or not, the record does not disclose. It may have been done when half the jury had been selected and sworn, and when half a day of the time of the court and county had been consumed on the case. It was certainly not done when the *venire* was first brought in, and the prisoners were placed at the bar for trial, and before the trial began.

In Charnock's case—3 Salk., 80—three were jointly indicted for treason, " and having severally pleaded not guilty, Chief Justice Holt told them that each of them had liberty to challenge thirty-five of those who were returned upon the panel to try them, without showing any cause; but that if they intended to take this liberty, *then* they must be tried separately and singly, as not joining in the challenges; but if they intended *to join in the challenges,* then they could challenge but thirty-five in the whole, and might be tried jointly upon the same indictment; accordingly, they all three joined in their challenges, and were tried together, and found guilty."

This case shows that before the trial begins—when the venire is brought in—it must be determined whether the two or more defendants will join in the challenges or not;

*and if they decline to join, that they must be tried sepa-rately.* This is a very old case, tried in the reign of Queen Anne—the oldest reported case which I have found. It is true that Sir Matthew Hale, in the pleas of the crown, who wrote in the time of Charles II, I think, does say that if there be twenty tried together, each shall have his thirty-five challenges—the number allowed at common law, (2 Hale, 267,) but this mode of trial, with so many challenges peremptorily made by each of many defendants, was soon found to be wholly impracticable; and the rule adopted by Chief Justice Holt in Charnock's case, to-wit: to require a joinder in the challenges, or to try separately, seems to have been adhered to since.

So Chitty, in his Criminal Law, vol. 1, p. 535, says: "But when the right of challenging exists, though several de-fendants are tried by *the same inquest,* each individual has a right to the full number of his challenges; *but if they refuse to join in their challenges,* they must be tried sepa-rately, in order to prevent the delay which might arise from the whole panel being exhausted." Mark the language, *tried by the same inquest,*" that is, where the same full panel of jurors is arranged for their trial, and before that full panel is stricken down by challenges to the traverse jury, which passes upon the case.

So, too, in a note to the foregoing comment of Sir Mat-thew Hale, the learned annotator says, in the first American edition, (2 Hale, 275): "If several prisoners are jointly in-dicted and join in their challenges, they can only challenge *the limited number of the whole;* but if they are tried separately, *then each of them may challenge the whole num-ber.*"

So Bishop (Crim. Proc. 1 vol., 969,) says: "But the method which seems *always* in later times to have been pursued, was either to try the prisoners separately, or else to obtain their consent to join in their peremptory chal-lenges."

So Hawkins says: "It seems agreed that when several

persons are arraigned upon the same indictment, and severally plead not guilty, it is in the election of the prosecutor, either to take out joint *venires* against them all, or several against each of them." Where the *venires* are several, the prisoners are to be tried separately." (Bishop Crim. Proc., 971.)

So, in T. U. P. Charlton's R., 22, in the case of the state against Monageuo and Segar, Judge Jones said after solemn argument : " In considering the objections of the prisoners in arrest of judgment at the last term, the second objec-was overruled ; *for that if they had wished the* liberty of challenging peremptorily each twenty jurors, they should have claimed that liberty *when sent to the bar to be tried;* but having agreed in their challenges, they could challenge but twenty in the whole, and one jury was therefore rightly sworn and charged with them." This was an old Georgia case, tried in 1805, and settles what was the idea of the common law in Georgia at that time.

All these cases and comments show conclusively that at common law, the practice was to settle the question of whether the prisoners would jointly or severally challenge at the very outset of the case ; and if they wished to challenge jointly, then they were tried jointly ; if they wished to challenge separately, then they were tried separately. "When set to the bar to be tried," is the time fixed in the language of our Georgia judge, who quotes Fost., 16 ; Kel., 9 ; 3 Salk , 81.

So that it seems settled that the conclusion was reached at common law to determine the question of joint or several challenge by calling upon the prisoners to elect, at the very beginning of the trial, whether they would insist on separate challenges ; and if they did so insist, then the crown would try each of them separately. It will be observed that, at common law, the right to sever was in the crown, not in the prisoner. True, it rested in the discretion of the judge, but at the instance of the crown. The prisoners had no choice. If the judge, at the instance of the crown, ordered a joint

trial, it was joint, no matter what the prisoner wished; if the judge ordered it to be several, it was so, no matter what the prisoner desired. He stood helpless, speechless, in the presence of the crown officer and the court, with no right to sever, but with the single right of thirty-five challenges. So that the moment the *venire* had issued and the panel appeared, and "he was set to the bar to be tried," he had to say, "I insist on my separate challenge," and then the court would not grant his separate and several challenge, on a joint trial, but it would order him to be tried separately. To show that I am right in the assertion that the prisoner had, at common law, no right to sever, but that it rested with the crown officer, at the discretion of the court, to try him as he pleased, jointly or separately, I quote 1 Bishop Crim. Prac., 959, as follows: "When the indictment is properly made joint against more persons than one, it is never the right of the defendants, as the matter stands at common law, to demand separate trials." And so Chitty and the other text writers, and all the authorities I have looked at, say.

But in this state, *the right to sever* is in the prisoners, or either of them. So it is distinctly ruled in 37 *Ga.*, 80, by a unanimous bench, overruling the intimations in 34 *Ga.*, 10, and confining the last quoted case, it being for riot, to cases where it takes two or more to commit the offense.

Thus it settled in this state, that whenever two or more are jointly indicted for an offense of which either might be guilty alone, either has the *legal right* to sever, and the court must grant it. And in practice, the judge uniformly (as in this case the judge did), asks the prisoners the moment they are brought in, or "set to the bar for trial," as Judge Jones said in the case in Charlton's Reports, "Will you sever or try jointly?" and if they choose to sever, then the state is asked, "Whom will you try first?" In 1st Kelley, 610, this is laid down as the rule, and it has been followed ever since, and was the practice before. In the case now before us, this choice was given to this prisoner, and he chose to be

tried jointly with the other; which meant a choice, on his part, to be tried, from *the beginning to the end of the trial*, jointly, with all the incidents and rules of a joint trial. The trial begins when the panel of jurors is arrayed before the prisoner, and closes with the verdict. Frequently, the most important part of the trial is the selection of the jury; and counsel familiar with the citizens of the county, are often employed solely with a view to select the jury—to strike and to challenge; and when this is done, they are no longer of service. " Trial is the examination of the matter of fact in issue," 3 Blackstone Com., 330; and trial by jury is that examination by a jury duly selected. That the selection of the jury was, at common law, a most important element in the trial, see Blackstone, 3d book, chap. xxiii—particularly page 357, *et seq.* to 366; also, 4th book, chap. xxvii, p. 349 *et seq.* to 356. So our own Code, §3907 *et seq.*, §§3930, 3935, 4678, 4685, 4643. See, also, 1st Kelley, pp. 222, 213, 618, 631.

It is plain, therefore, that this man and his counsel had their right to a separate *venire*, a separate challenge, and a separate trial, from beginning to end, accorded to him; and that for reasons best known to his counsel and himself, he preferred *one venire*, joint challenge and joint trial. He got what he desired and chose, and he cannot complain.

But it is said that the language of the Code is, " every person indicted," etc., etc., " may peremptorily challenge" twenty jurors. Section 4643. So it does say; and so may every person have the twenty, whether indicted jointly or severally, by simply choosing to be tried separately. Besides, the singular number includes the plural in our Code, " unless expressly excluded." There is no express exclusion here. Code, section 4—sub-section 4.

Again, see how much confusion a joint trial, with separate challenges, will work; part of the trial joint and part separate. A separate count must be kept as to each prisoner, and then the state must have half the number each prisoner has—Code, §4643—and the count must be kept of that.

Again, where two prisoners try together, they would have forty challenges ; and then the state would have twenty.  So that the state would have the right to reject, against that prisoner whom it wished particularly to convict, twice as many as on a separate trial ; and as the prisoner would have but twenty, the state, instead of having half the number the prisoner had, would have practically and virtually AN EQUAL NUMBER, which is in the teeth of the statute.

Again, *every person* tried is entitled to his witnesses ; his right to witnesses—competent as to him—is just as sacred as his right to jurors, to challenge jurors ; yet, who ever heard that, in case of a joint trial, he could have sworn all the witnesses competent as to him, if incompetent as to the others on trial, unless, by an agreement with the state, the right was reserved before the trial began.  So, by choosing to try jointly, he looses his right to competent witnesses ; why not his right to challenge all of twenty jurors?

Again, all of the court think that he will loose his right to conclude, though he has introduced no witness ; if so, why not his right to challenge the whole twenty allowed?  The right to conclude the argument is a great right.  Sometimes many witnesses will not be sworn, and much testimony will be sacrificed in order to secure this right.  Yet, by choosing to try jointly, he will loose it, though the law says he shall have it, unless he introduces testimony.  Code, §4645.

Again, five are jointly tried.  Three introduce evidence and two none ; which of the two shall conclude upon the the other?  Both are entitled to it ; for neither introduced any evidence.  See what an inextricable labyrinth of confusion must grow up out of such a practice ; and how certainly, in the language of the circuit judge who tried this case, the trial—a clean, fair trial—would be *blocked.*  No wonder an English judge, in the olden time, when an effort was made by a prisoner to get a separate trial as to challenge, but joint in some other respects, said to him : "I perceive your subtilty" ; and hence, made him try all joint—challenges and all—or all separate.

It will be observed that in England, and at common law, the defendant had no right to sever, but the crown had that right; while .the crown had no peremptory challenges at all.   So that, even if it had been the practice at common law to allow, in joint trials, separate challenges—which I do not concede—the courts would not there have experienced the difficulties which I have shown would arise here, in allowing the state one-half the prisoner's challenges.   See 4 Blackstone, 353.   So in respect to the right to conclude, the crown, I believe, having the right in all cases, as the state did here, until altered by the act of. .1851 and 1852.

In view of the entire law, common and statute, my mind comes irresistibly to the conclusion, that although at one time the courts of England may have tried cases jointly, and permitted separate challenges, the practice was abandoned, because it was found to work great confusion there; and this change in the practice can be traced back as far as Queen Anne's reign, when the prisoner was allowed by the judge, *when set to the bar*, to select between a joint trial, with all its consequences, and a separate trial, with all its advantages, including the right to a separate challenge. And that, in this state, the practice has been uniform and unbroken, so far as I have ever known, from Judge Jones' day, 1805, up to this year of our Lord, 1877.   "*Stare decisis*" is a great maxim, useful and practical in beneficent results; let the practice stand, unless squarely in the teeth of the law, is practically of equal importance.   Changes in it breed litters of confusion and uncertainty.   I cannot give my assent to the opening of this Pandora's box, which, it seems to me, would result.   Besides, this court has ruled the point in 13 *Ga.*, 322.   It is true, that was a case where the offense was an affray, and the offense required the act of both; still, the principle ruled is, that *every person* tried is not entitled to the number of challenges allowed *him* by law, if he is tried with others.