INTERNATIONAL HARVESTER COM-
PANY, a corporation; Phillips Petrole-
um Company, a corporation; De Luxe
Check Printers, Incorporated, a corpo-
ration; Sunshine Biscuit Company, Inc.,
a corporation; Sealright-Oswego Falls
Corporation, a corporation; and Jones
& Laughlin Steel Corporation, a corpo-
ration, Appellants,

v.

The City of KANSAS CITY, Kansas, a
municipal corporation; Robert J. Fos-
ter, County Attorney of Wyandotte
County, Kansas; James L. Conroy,
County Clerk of Wyandotte County,
Kansas; and The Board of County Com-
missioners of the County of Wyandotte
Kansas, Appellees.

No. 6940.

United States Court of Appeals
Tenth Circuit.

Aug. 15, 1962.

Rehearing Denied Sept. 11, 1962.

Leonard O. Thomas, Kansas City, Kan. (J. Donald Lysaught, Kansas City, Kan., and Ervin G. Johnson, Wichita, Kan., and Stanley, Schroeder, Weeks, Thomas & Lysaught, Kansas City, Kan., of counsel, were with him on the brief) for appellants.

J. W. Mahoney, Asst. City Atty. (C. W. Brennelsen, Jr., City Atty., Kansas City, Kan., was with him on the brief) for appellees.

Before PHILLIPS, PICKETT and LEWIS, Circuit Judges.

LEWIS, Circuit Judge.

This suit was brought by corporate property owners within an area known as Fairfax Industrial District, which lies between Kansas City, Kansas, and the Missouri River, to have declared invalid an annexation ordinance. The plaintiffs claimed federal jurisdiction on the basis of diversity of citizenship [1] and violation of their rights under the fourteenth amendment to the United States Constitution.[2] It is asserted and not contested that the pecuniary repercussions of the annexation will amount to more than $10,000 in taxes assessed against each of the plaintiffs.

The trial court dismissed the action upon the grounds that plaintiffs, under Kansas law, had no capacity to maintain the action and had presented no justiciable question under federal law.

Although plaintiffs' complaint seeks multiple and varied relief and their appellate approach to the issues is equally broad we think the determinative questions can be simply stated thus: Under Kansas law, is it the duty of a county attorney to initiate judicial proceedings questioning the validity of a municipal annexation ordinance when demand upon him to do so is made by a property owner within the annexed area? Can such property owner, under Kansas law, attack the validity of an annexation ordinance upon allegation that the county attorney arbitrarily refuses to act? And finally, do the Kansas procedures pertaining to judicial review of the validity of annexation ordinances, viewed against the factual background of the case, amount to a denial of due process under federal law?

The Board of City Commissioners of the City of Kansas City passed the questioned ordinance, No. 41525, in 1958. The then county attorney, Martin, commenced an original proceeding in the District Court of Kansas in the nature of quo warranto to test the validity of the ordinance under General Statutes of Kansas 1949, 13–1602, but while the action was still pending he was succeeded in office by the appellee Foster. The attorney general of Kansas later intervened in the case, superseded the county attorney as the representative of the state, and moved to dismiss the proceeding because of the expense of this and prior litigation upon the problem (State ex rel. Fatzer v. City of Kansas City, 169 Kan. 702, 222 P.2d 714; State ex rel.

---

1. 28 U.S.C.A. § 1332: "(a) The district court shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10.000 exclusive of interest and costs, and is between—
 "(1) citizens of different States; * * *."

2. 28 U.S.C.A. § 1331: "(a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws or treaties of the United States. * * *"

Martin v. City of Kansas City, 181 Kan. 870, 317 P.2d 806) and in the public interest. The motion of the attorney general was granted and the proceeding was dismissed. State ex rel. Foster v. City of Kansas City, 186 Kan. 190, 350 P.2d 37. Two of the present appellants there sought leave to intervene as did Quindaro township, which had claimed the area within its domain, but were denied the right to proceed.

After an unsuccessful attempt to obtain a Writ of Certiorari from the United States Supreme Court, Girten Investment Co. v. Kansas ex rel. Anderson, 363 U.S. 831, 80 S.Ct. 1598, 4 L.Ed.2d 1525, demand was made upon Foster to initiate further proceedings and, upon refusal, this action was filed in the United States District Court for the District of Kansas.

█ Case law in Kansas has firmly established the rule that the validity of a municipal annexation ordinance can be tested only by the state acting through one of its proper officers. In Smith v. City of Emporia, 168 Kan. 187, 211 P.2d 101, 13 A.L.R.2d 1272, a private citizen sought relief against an annexation ordinance of the City of Emporia. After an exhaustive review of Kansas cases the Supreme Court of that state held that the plaintiff lacked capacity to sue. Similarly, in Lampe v. City of Leawood, 170 Kan. 251, 225 P.2d 73, it is stated:

" * * * in this jurisdiction actions to inquire into the validity of the proceedings creating a municipal corporation, or modifying its boundaries, cannot be maintained by a private individual. They can be prosecuted only by the State acting through one of its proper officers, such as the county attorney or the attorney general. * * * "

Appellants would distinguish these authorities and hold them inapplicable because of allegations in the case at bar that demand was made upon the county attorney to institute an action, that the county attorney refused, and the additional claim that such refusal was arbitrary. We see no merit to these contentions.

█ Quo warranto proceedings are an exculsive remedy to test the city's exercise of its purportedly granted powers in Kansas and traditionally assert the interests of the sovereign in preventing the invasion of its prerogatives. In such an action, the state is the plaintiff and the county attorney and attorney general seek only the vindication of the rights of the state, State ex rel. Mitchell v. Sage Stores Co., 157 Kan. 622, 143 P.2d 652, aff'd. 323 U.S. 32, 65 S.Ct. 9, 89 L.Ed. 25.

█ The power to institute such an action is one of discretion not compulsion and the proper public official has the duty not to prosecute an unmeritorious action. State ex rel. Foster v. City of Kansas City, Kansas, 186 Kan. 190, 350 P.2d 37. If simple demand by a taxpayer would change this rule the responsibility of public officials would be meaningless. It is true that in Bobbett v. State ex rel. Dresher, 10 Kan. 9 (1872) there appears dicta to the effect that an individual may compel or control quo warranto proceedings where he holds a particular (though undefined) right independently of that which he holds as a member of a public class. Such interest, however, cannot be that of citizen, resident or taxpayer nor, indeed, even a claimant for tort whose cause of action is dependent upon the extent of valid city boundaries. Horner v. City of Atchison, 93 Kan. 557, 144 P. 1010. Appellants here claim no interest except that of landowners within the annexed area.

The allegation in appellants' complaint that the refusal of the county attorney to institute proceedings was arbitrary appears only as a bald conclusion. The trial court interpreted (and we think correctly) the factual allegations of the complaint as indicating appellants' claim to be thus:

"So it would seem that the plaintiffs feel that upon request to the county attorney to prosecute such an action the county attorney should

commence an action, and if he refuses, he is arbitrary and capricious. An examination of the cases cited by counsel does not indicate in any manner that the county attorney's discretion must result in the same conclusion as a part of the public which he represents."

[4, 5] Appellants now argue,[3] but apparently for the first time, that opportunity should have been given them to show that the refusal to act by the county attorney was perhaps motivated by political expediency, lack of legal acumen or energy, corruption or disagreement with the desirability of the law itself. It is sufficient to say that the pleading of a bald conclusion unsupported by factual allegation will not save an otherwise fatally defective pleading and that in any event the traditional remedy for such conditions, should they exist, lies at the polls or in the more drastic steps for removal from office. We conclude that the trial court correctly held that appellants had no capacity to sue under Kansas law and that the action was properly dismissed as premised on diversity jurisdiction.

 Having no private remedy under Kansas law is, appellants contend, a violation of due process under the fourteenth amendment. And certain it is that a state cannot legislate upon even a matter of complete state interest in such a manner as to abuse a federal constitutional right. Gomillion v. Lightfoot, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110. But in the case at bar appellants' primary attack upon the validity of the Kansas City ordinance is limited to the claim that the ordinance violates state law. Federal courts do not review such a claim under the jurisdiction conferred by 28 U.S.C.A. § 1331 and the result of error in the administration of state law, though injury may result, is not a matter of federal judicial cognizance under the the due process clause of the fourteenth amendment. Here Kansas has provided and determined the powers, methods and procedures for the annexation of property by municipal corporations and the safeguards thought necessary to protect against abuse. Such a subject is a proper one for state control and:

"We have nothing to do with the policy, wisdom, justice or fairness of the act under consideration; those questions are for the consideration of those to whom the State has entrusted its legislative power, and their determination of them is not subject to review or criticism by this court.

\* \* \* \* \* \*

"Municipal corporations are political subdivisions of the State, \* \*. For the purpose of executing these powers properly and efficiently they usually are given the power to acquire, hold \* \* \* property. The number, nature and duration of the powers conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the State. \* \* \* The State, therefore, at its pleasure may modify or withdraw all such powers, may take without compensation such property, hold it itself, or vest it in other agencies, expand or contract the territorial area, unite the whole or a part of it with another municipality, repeal the charter and destroy the corporation. \* \* \* In all these respects the State is supreme, and its legislative body, conforming its action to the state constitution, may do as it will, unrestrained by any provision of the Constitution of the United States. Although the inhabitants and property owners may by such

3. This contention is presented only in the abstract. Any attempted proof in support of the theory would be faced headon by the fact that in the earlier action the county attorney had been superseded by his superior, the attorney general, and the proceeding dismissed "in the public interest." State ex rel. Foster v. City of Kansas City, supra. It is difficult to see how under these circumstances the refusal of the county attorney to re-file the action could be arbitrary.

changes suffer inconvenience, and their property may be lessened in value by the burden of increased taxation, or for any other reason * * *. The power is in the State and those who legislate for the State are alone responsible for any unjust or oppressive exercise of it." Hunter v. Pittsburgh, 207 U.S. 161, 178, 28 S.Ct. 40, 45, 52 L.Ed. 151.

See also: Hagar v. Reclamation District No. 108, 111 U.S. 701, 4 S.Ct. 663, 28 L. Ed. 569; Davidson v. New Orleans, 96 U.S. 97, 24 L.Ed. 616; Fallbrook Irrigation District v. Bradley, 164 U.S. 112, 17 S.Ct. 56, 41 L.Ed. 369.

Neither the due process clause nor the concept of equal protection is available to persons seeking to obstruct the ordinary and necessary exercise of a state's political functions and the judgment of the trial court is accordingly affirmed.